UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NEGUSSE STALEY,

                    Petitioner,

v.                                                    Case No.  8:06-cv-1122-T-17TGW

SECRETARY  DEPARTMENT OF
CORRECTIONS,

                    Respondent.
_____/

## **ORDER**


        Before this Court is an amended petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254 filed by Negusse Staley (Staley), a Florida prisoner. The petition attacks

Staley's convictions for home invasion robbery and burglary of a dwelling arising from the

Sixth Judicial Circuit in Pinellas County, Florida in Case No. CRC99-19109CFANO.

        A review of the record demonstrates that, for the following reasons, the petition must

be denied.

PROCEDURAL HISTORY

        On November 10, 1999, the State Attorney filed an information charging Staley with

one count each of home invasion robbery (Count I) and burglary of a dwelling (Count II).

(Exh 24: Vol. 1: R 8- 9).[1] On October 9, 2000, the State filed an amended information

_____

        [1] Respondent filed 24 exhibits in paper form as attachments to the original response filed on October
30, 2006. (Doc. No. 15). The seven-volume record on direct appeal is attached as Respondent's Exhibit 24.
Volumes 1 and 2, which contain the documentary record, are referred to by volume number followed by the
appropriate page number located in the bottom center of the page. Volume 2 also contains the transcript of
the motion for new trial, on pages 169-182. Volumes 3-6 contain the trial transcript, which is referred by
(continued...)

adding statute section 775.087, Florida Statutes. (Exh 24; Vol. 1: R 16). On January 3, 2001, the State filed a motion to present Kent Leslie's trial testimony through broadcast transmission. The motion was granted by the trial judge. (Exh 24: Vol. 1: R 18-21). A jury trial was held before the Honorable Robert Beach, Circuit Judge, beginning on January 9, 2001. Staley was represented by Assistant Public Defender Bruce M. Johnson. The jury found Staley guilty of both counts as charged. (Exh. 24: Vol. 1: R 43-44). On January 11, 2001, the court found that Staley met the criteria for both habitual offender and prison releasee reoffender classifications, and sentenced Staley to life imprisonment on Count I under both classifications, and to fifteen years in prison as a prison releasee reoffender on Count II. (Exh 24: Vol. 1: R 75-80).

On September 12, 2001, Staley's appellate counsel filed in the trial court a motion to correct illegal sentence pursuant to Rule 3.800(b)(2). (Exh 24: Vol. 7: R 199-221). On October 9, 2001, the trial court filed an order granting Staley's motion. (Exh 24: Vol. 7: R 222-224). The court found merit to Staley's arguments and directed the clerk to amend the sentence, striking the habitual offender designation on count one, and striking the prison releasee reoffender designation on count two. The sentence was so amended on October 12, 2001. (Exh 24: Vol. 7: R 230-234).

Staley pursued a direct appeal. Staley's counsel, Assistant Public Defender Megan Olson, filed an initial brief (Exhibit 1) raising two issues:

---

[1](...continued)
volume number followed by the reporter's number located in upper right hand corner of the page. Volume 7 contains the documents relating to the motion to correct sentence. The clerk designated some volumes as addendum or supplemental volumes, but Respondent re-numbered the 2 volumes as 1 to 7. Respondent's Exhibits 25-34 (pertinent to the more recent state court proceedings) are filed as Doc. No. 34.

Issue I

THE TRIAL JUDGE ERRED IN ALLOWING THE STATE TO PRESENT MR. LESLIE'S TESTIMONY VIA SATELLITE TRANSMISSION.

Issue II

THE TRIAL JUDGE ERRED IN RUNNING MR. STALEY'S SENTENCES FOR BURGLARY AND HOME INVASION ROBBERY CONSECUTIVELY WHERE THE TWO OFFENSES AROSE FROM A SINGLE CRIMINAL EPISODE.

The State filed its answer brief. (Exhibit 2). On November 8, 2002, in Case No. 2D01-723, the Second District Court of Appeal issued a written opinion affirming Staley's convictions without comment, but ordering that Staley be resentenced so that the thirty year sentence on Count II run concurrent with Count I because the two offenses occurred in one criminal episode. (Exhibit 3). *Staley v. State*, 829 So. 2d 400 (Fla. 2d DCA 2002). The appellate court issued its mandate on November 27, 2002. (Exhibit 4). Staley was resentenced in accordance with the appellate court's instructions on January 30, 2003. Staley did not appeal after resentencing.

On August 7, 2003, Staley filed a motion for postconviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. (Exhibit 5). Later, Staley filed first, second, and third amended motions. (Exhibits 6, 7, and 8). In all, Staley raised fifteen (15) grounds for relief. The State filed its response to the rule 3.850 motions on July 7, 2004. (Exhibit 9). Staley filed a reply to the State's response. (Exhibit 10). On April 18, 2005, the Honorable Richard A. Luce, Circuit Judge, issued an order, with pertinent record attachments, summarily denying all claims. (Exhibit 11). Staley then filed a motion for rehearing (Exhibit 12), which the trial court denied on May 12, 2005. (Exhibit 13).

Staley appealed the adverse rulings. Because of the summary nature of the proceeding, briefs were neither required nor filed by either party. The summary denial of the original and amended motions was affirmed on appeal by the Second District Court of Appeal on December 21, 2005, in Case No. 2D05-2671. (Exhibit 14). *Staley v. State*, 917 So. 2d 875 (Fla. 2d DCA 2005)[Table]. The mandate issued on January 11, 2006. (Exhibit 15).

On June 29, 2004, while the rule 3.850 proceeding was still pending, Staley filed a petition for writ of habeas corpus in the Second District Court of Appeal alleging ineffective assistance of appellate counsel. (Exhibit 16). He filed a supplement to the petition on July 6, 2004. (Exhibit 17). The State filed a response to the petition, with record excerpts attached, on October 11, 2004. (Exhibit 18). Staley then filed a reply brief. (Exhibit 19). On January 10, 2005, in Case No. 2D04-2999, the district court of appeal filed an order denying the petition for writ of habeas corpus without discussion. (Exhibit 20).

On August 10, 2005, Staley filed a motion to correct illegal sentence pursuant to Fla. R. Crim. P. 3.800(a). (Exhibit 21). The trial court summarily denied the motion on February 7, 2006. (Exhibit 22). Staley appealed the order denying relief. On August 4, 2006, in Case No. 2D06-865, the appellate court filed an opinion reversing the denial of postconviction relief and directing the trial court to resentence Staley on the home invasion robbery count. (Exhibit 23). *Staley v. State*, 934 So. 2d 664 (Fla. 2d DCA 2006). The court held that Staley's enhanced life sentence on that count was illegal because the jury did not make a specific finding that he used a deadly weapon. On October 25, 2006, Staley was

resentenced on Count I only to thirty (30) years in prison with a thirty (30) year minimum mandatory as a prison releasee reoffender. (Exhibit 25: Progress Docket).

On February 12, 2007, Staley filed another motion to correct sentence pursuant to Rule 3.800(a). (Exhibit 26). Staley alleged his convictions and sentences on both counts of the Information violated double jeopardy. The trial court directed the State to show cause why the motion should not be granted. On May 14, the State filed its response. (Exhibit 27). Staley then filed a reply to the State's response. (Exhibit 28). On June 20, 2007, the court entered a written order summarily denying the motion to correct sentence. (Exhibit 29). Staley appealed the adverse ruling. He filed an initial pro se brief. (Exhibit 30). Because of the summary nature of the proceeding, the State did not file an answer brief. On October 17, 2007, in Case No. 2D07-3307, the Second District Court of Appeal filed a per curiam opinion, with citations, affirming the trial court's denial of the Rule 3.800(a) motion. (Exhibit 31). *Staley v. State*, 969 So. 2d 1032 (Fla. 2d DCA 2007)[table]. Staley filed a motion for rehearing (Exhibit 32), which the appellate court denied on November 30, 2007. (Exhibit 33). The court issued its mandate on December 19, 2007. (Exhibit 34).

THE PRESENT PETITION

Staley signed the original § 2254 petition on April 24, 2006. The petition was filed in the Southern District of Florida on  May 5, 2006. In the amended petition, filed in this Court on February 8, 2008, Staley adds a third ground for relief, raising the following three grounds in all:

Ground One

THE PETITIONER'S SIXTH AMENDMENT CONFRONTATION RIGHT WAS VIOLATED BY THE ADMISSION OF SATELLITE TESTIMONY SINCE IT WAS NOT NECESSARY TO FURTHER PUBLIC POLICY.

Ground Two

THE TRIAL COURT ERRED IN FAILING TO GRANT THE PETITIONER A POSTCONVICTION EVIDENTIARY HEARING BASED ON INEFFECTIVE ASSISTANCE OF COUNSEL.

Ground Three

THE STATE COURT ERRED IN FAILING TO VACATE ONE OF THE PETITIONER'S CONVICTIONS AND SENTENCE SINCE THEY WERE IN VIOLATION OF DOUBLE JEOPARDY.

STANDARDS OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

## DISCUSSION

### Ground One

Staley contends his Sixth Amendment confrontation right was violated by the admission of satellite testimony since it was not necessary to further a public policy. This claim has no merit.

### Background

Prior to trial, the State filed a Motion to Present Testimony Via Broadcast Transmission, asking the trial court to admit the testimony of Kent Leslie, who resided in Australia with no plans to resume residence in the United States. (Exh 24: Vol. 1: R 18-20). The motion set out that Mr. Leslie submitted one hundred job employment applications over a period of six months before becoming employed in December 2000, and that his employer would not guarantee his continued employment if he were to return to Florida for the trial scheduled for January 9, 2001. (Exh 24: Vol. 1: R 18-19). Mr. Leslie, who resided in Brisbane, Australia offered to travel to Sydney, Australia in order to give satellite

testimony. (Exh 24: Vol. 1: R 19) The State contended that Mr. Leslie resided beyond the

territorial jurisdiction of the state trial court and, alternatively, argued that Mr. Leslie was

unable to attend the January 9, 2001, trial. (Exh 24: Vol. 1: R 19) Moreover, the State

argued that his testimony was material and necessary to prevent a failure of justice. (Exh

24: Vol. 1: R 19) The Honorable Brandt C. Downey, Jr., Circuit Judge, considered the

parties' arguments and granted the State's motion on January 8, 2001. (Exh 24: Vol. 1: R

21)

The record contains a Statutory Declaration by Mr. Leslie in which he stated that he

married in Australia on September 19, 2000, and was granted residency there on

December 14, 2000. (Exh 24: Vol. 1: R 103) He further stated:

> If I left the area for any length of time, I would loose [sic] my position/earning
> ability. The job market here in Australia is very tight. Leaving the area now
> would be financially disaterious [sic]. My financial situation does not allow me
> to leave at this time.

(Exh 24: Vol. 1: R 103).

At the hearing on the motion for new trial, Staley renewed his objection to the trial

court's having permitted Mr. Leslie to testify via satellite transmission. (Exh 24: Vol. 2: R

170-171) The prosecutor pointed out that Judge Downey had determined that Mr. Leslie

could testify via satellite. (Exh 24: Vol. 2: R 176) The trial was held before Judge Beach,

as was the hearing on Staley's motion for new trial. At the hearing, Judge Beach

commented in pertinent part:

> THE COURT: Yes. And that with the availability of satellite testimony
> that he was available for direct and cross-examination. The picture was quite
> clear. The audio was quite clear.

He was able to make an in-court identification, a very positive in-court identification, so that -- and the jury was able to clearly see his expressions and his demeanor and the way in which he answered the questions and see how he reacted to cross-examination.

So they were able to utilize all of their faculties in judging the testimony of the witness, both visually and audibly, as they would if the witness was alive -- present in the courtroom physically.

So that all of the things that we require for a witness as far as confrontation and presentation occurred with this satellite presentation. And so I don't see any prejudice to the defendant by the presentation of this witness.

And it would be of great hardship to require this witness to leave Australia -- he'd just gotten a job, as I recall, been there for six months to a year trying to get a job -- to require him to fly halfway around the world to testify.

And his presence wouldn't have added or detracted anything from his being presented by video.

(Exh 24: Vol. 2: R 177-178)

During trial, the State addressed the issue of whether or not Mr. Leslie would be subject to prosecution for perjury, explaining to the trial court that it is an extraditable crime pursuant to U.S. treaties and other international agreements, specifically No. 8234 between the United States and Australia on 5/14/74, and amended 8234. The prosecutor specifically referenced 10223 between the United States and Australia, enacted in 1992, which provides for dual comity between the United States and Australia, and states that a person may be extradited from Australia for any crime that is a crime in the United States. (Exh 24: Vol. 4: T 251-252.) Thus, the State argued, Mr. Leslie was still liable for perjury whether he committed that crime in the United States or in Australia. (Exh 24: Vol. 4: T 252).

**Analysis**

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." The United States Supreme Court has "never held, however, that the Confrontation Clause guarantees criminal defendants the absolute right to a face-to- face meeting with witnesses against them at trial." *Maryland v. Craig*, 497 U.S. 836, 844 (1990) (emphasis added). In *Craig*, the court stated that "the Confrontation Clause reflects a preference for face-to-face confrontation at trial, a preference that must occasionally give way to considerations of public policy and the necessities of the case." *Id.* at 849, 110 S. Ct. at 3165 (quoting *Mattox v. United States*, 156 U.S. 237, 243 (1895)). "A defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and where the reliability of the testimony is otherwise assured." *Id.* at 850.

On direct appeal, Staley did not contend that the safeguards of oath, cross-examination and observation of the witness's demeanor were not satisfied.[2] Nor did Staley specifically argue, as he does in this federal proceeding, that the procedure in this case was not necessary to further an important public policy. Rather, Staley contended in his initial brief that the State did not show Mr. Leslie was unable to come to the trial or that his

---

[2] Nevertheless, the State correctly noted that Mr. Leslie was administered the oath by the court clerk, that he was cross-examined by defense counsel, and the trial judge commented that the transmission video was extremely clear, so that the jurors were obviously able to see Mr. Leslie's demeanor and assess his credibility.

testimony was material.[3]  The State argued in the answer brief that both Judge Downey and Judge Beach properly found that the State satisfied the requirements for using satellite testimony.

The witness, Kent Leslie, provided a sworn document, similar to a notarized affidavit, stating that he had moved to Australia, gotten married there and been granted residency there. Although he retained his American citizenship, he did not have plans to resume residency in the United States. He stated that the job market was not good there and that he had applied for jobs for six months, sending out some one hundred resumes before securing a position there. His employer would not guarantee his position would be available if he were to suddenly leave and come to Florida to testify in person at Staley's trial. The State contended on appeal that these facts adequately meet the first requirement, *i.e.,* the State presented the witness's sworn statement that he may be unable to attend or be prevented from attending Staley's trial. The State argued that loss of one's livelihood for perhaps an extended period of time may be found to be a valid reason that prevents or makes a witness unable to attend a trial being held half-way around the world from where he resides. It is not as if this witness were merely on vacation in Australia. Rather, the State contended, Mr. Leslie now resides in Australia and needs to be able to make a living there.

At the time of Staley's trial, the controlling Florida precedent for admission of satellite testimony was found in *Harrell v. State,* 709 So. 2d 1364 (Fla. 1998). In that case, the Florida Supreme Court, following *Mattox*, acknowledged that a criminal defendant's right

---

[3] To the extent Staley's basis for arguing a Sixth Amendment violation is different than that specifically presented to the state courts, Respondent submits the claim should be dismissed as unexhausted and procedurally barred.

to physically confront his accusers is not absolute, but is subject to certain exceptions based on "'considerations of public policy and the necessities of the case.'" *Harrell,* 709 So. 2d at 1368 (quoting *Mattox v. United States*, 156 U.S. 237, 243 (1895)). The court noted that "such exceptions are only permitted when the reliability of the testimony is otherwise assured" by oath, cross-examination and observation of the witness's demeanor. *Id.* Thus, the court stated that satellite testimony "must (1) be justified, on a case-specific finding, based on important state interests, public policies, or necessities of the case and (2) must satisfy the other three elements of confrontation -- oath, cross-examination, and observation of the witness's demeanor." *Id.* at 1369. The Florida Supreme Court found the procedure in the *Harrell* case satisfied the constitutional requirements delineated in *Craig* and *Mattox.* The court concluded that public policy considerations justified an exception to face-to- face confrontation and, thus, the first prong of the *Craig* analysis was satisfied. *Id.* at 1369.

Later, Harrell filed a § 2254 petition in the Southern District of Florida raising the same confrontation rights claim he had presented to the state courts. Harrell appealed the denial of his habeas petition. *Harrell v. Butterworth*, 251 F.3d 926 (11th Cir. 2001). The Eleventh Circuit concluded that the Florida Supreme Court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as set out in *Maryland v. Craig.* The Eleventh Circuit opined that the Florida Supreme Court's conclusion that public policy considerations justified an exception to face-to-face confrontation was neither contrary to, nor an unreasonable application of Supreme Court law under the circumstances of the case. In Harrell's case, the witnesses lived beyond the subpoena

power of the court; one of the witnesses was in poor health; the two witnesses were

absolutely essential to the case; both witnesses were placed under oath by a court clerk;

Harrell had an opportunity to cross-examine the witnesses; and, the jury could observe the

witnesses as they testified, and the witnesses could see the jury. *Harrell v. Butterworth,* 251

F.3d at 931.

Where no Supreme Court precedent is on point, or the precedent is ambiguous, it

cannot be said that the state court's conclusion is contrary to clearly established governing

federal law. *Mitchell v. Esparza*, 540 U.S. 12 (2003); *Washington v. Crosby*, 324 F.3d 1263,

1265 (11th Cir. 2003). Staley has cited no Supreme Court precedent directly on point and

research by undersigned counsel revealed none. Thus, the state court's decision cannot

be contrary to clearly established governing federal law.

Moreover, the state court did not unreasonably apply Supreme Court precedent to

the facts of this case. Staley's situation did not involve a one-way closed circuit television

transmission as in *Maryland v. Craig*,[4] nor was there a screen blocking the view between

the witness and the defendant as in *Coy v. Iowa*, 487 U.S. 1012, 1014 (1998). Staley was

accorded all facets of confrontation except one: the actual physical presence of Mr. Leslie.

As previously noted, the Supreme Court held in Craig that there are exceptions where a

defendant's right of face-to-face confrontation will give way to "considerations of public

policy and the necessities of the case." *Maryland v. Craig*, 497 U.S. at 849. The court

stated that "such exceptions are only permitted when the reliability of the testimony is

---

[4] In Craig, because of the one-way feature of the television broadcast, the six-year old witness
testifying in a child abuse case never saw the defendant in person or via a video monitor. The court in Craig
emphasized the importance of the witness seeing the defendant as she testified, and reasoned that case
specific findings were necessary when those purposes were not met. 497 U.S. at 851.

otherwise assured." *Id.* at 850. The court added that "[r]eliability can be exhibited through the other three elements of confrontation--oath, cross-examination, and observation of the witness's demeanor." Id. at 851. Although the physical presence of witnesses is preferred, *see Craig,* 497 U.S. at 849, the state court was not unreasonable in finding an exception in this case due to public policy considerations and the necessities of the case.

Staley's reliance upon *United States v. Yates*, 438 F.3d 1307 (11th Cir. 2006)(en banc) is misplaced. In *Yates,* two witnesses who resided in Australia testified and were cross-examined via live, two-way video conference at trial. It was undisputed that the witnesses were "unwilling to travel to the United States." The Government asserted an "important public policy of providing the fact-finder with crucial evidence," and that "the Government also has an interest in expeditiously and justly resolving the case."

Staley cannot rely on Yates to support his argument for at least two reasons. First, *Yates* involves a direct appeal from a federal conviction. Staley's case, which involves a state prisoner who has been convicted in state court, is reviewed under the more restrictive and deferential standard of the AEDPA. Accordingly, this federal court must consider only whether the state court decision constituted an objectively reasonable one pursuant to United States Supreme Court precedent.

Second, the facts of the two cases are distinguishable. Whereas the witnesses in *Yates* were unwilling to travel to the United States, the witness in Staley's case might have suffered severe financial or employment hardship had he been forced to appear at trial. This case is more akin to *Harrell v. Butterworth*, in that of the two witnesses who resided

in Argentina, one was too ill to travel.[5]  *Harrell,* 251 F.3d at 928. Moreover, in *Yates* the Government argued that the important public policy that was being furthered was the Government's desire to provide crucial evidence and expeditious resolution of the case, which the Eleventh Circuit sagely noted are factors which exist in every case. Here, however, it is apparent the trial court found that the potential financial hardship to the victim/witness which could result from his taking leave from his new job was the primary policy consideration. The threat of losing one's livelihood is far more serious than any "inconvenience" to the witness in traveling to the United States to appear in person at trial as argued by Staley in his direct appeal. It cannot be said that under the circumstances of this case, the trial court's ruling allowing the satellite testimony of Kent Leslie was contrary to or an unreasonable application of Supreme Court precedent.

### Harmless Error

The satellite testimony of Kent Leslie was properly admitted in this case and there was no violation of Staley's Sixth Amendment confrontation rights. Even if there were error in admitting the satellite testimony, the admission of the testimony was harmless.[6]

Confrontation Clause violations are subject to harmless-error review. *Coy v. Iowa*, 487 U.S. 1012, 1021-1022 (1988). In light of the State's evidence implicating Staley, it is objectively reasonable to conclude the claimed constitutional error, if such existed [not

---

[5] The opinion does not state the reason why the other witness in *Harrell* could not or was unwilling to travel.

[6] The State preserved a harmless error argument, albeit briefly, in its answer brief on direct appeal. (See Answer Brief of Appellee at p. 12).

conceded], did not have a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

The State's evidence included two additional eyewitnesses: Desmond Fitzgerald, Mr. Leslie's housemate at the time of the home invasion, and James Burnett, Staley's uncharged co-perpetrator. The testimony of these two witnesses, along with physical evidence linking Staley to the crimes, was compelling.

Mr. Fitzgerald, Mr. Leslie's housemate, testified at trial that he had gone out to the Harp and Thistle, an Irish pub, that evening. He drove home about 1:30 a.m. After he had parked the car and had gotten out, a black man, later identified as Staley, approached him and asked him to move his car. Fitzgerald was nervous because Staley was acting "edgy," so Fitzgerald left his car and continued to his apartment. (Exh 24: Vol. 4: T 277-279). Staley followed Fitzgerald to the apartment. Fitzgerald entered the apartment and locked the door. Staley remained standing outside. Kent Leslie was already in bed asleep and Fitzgerald went to bed also. *(Id.* at 282-283). Later, Fitzgerald was awakened by Leslie, who told Fitzgerald somebody was breaking into the apartment. *(Id.* at 284). Fitzgerald followed Leslie into the kitchen. He observed that the telephone was hanging on the ground, and he could feel broken glass from the living room door under his bare feet. (*Id.* at 284-285). Fitzgerald also saw the confrontation between Leslie and Staley. Staley was hacking at the glass in the door with a large knife or machete. Leslie was trying to prevent Staley from advancing through the door by holding up a chair and pushing it toward Staley. (*Id.* at 286). Staley threatened to kill the two victims, stating, "I'm going to kill your sorry ass." (*Id.*). As Staley continued to try to break through the door, James Burnett appeared behind Staley

-16-

and told Staley, "Come on, get out of here" about a half dozen times, but Staley continued to attempt to break through the door and threaten the two victims. (*Id.* at 287). Fitzgerald could not describe the clothing Staley was wearing that night except for a round green hat, but testified that he looked into Staley's face several times and noticed his distinctive mustache and piercing eyes. (*Id.* at 289). Fitzgerald described several personal items of his that were taken from the apartment, such as fishing poles, a pair of jeans, leather zip-up case, a traveler's check, his passport, a key ring, and an unusual cigarette lighter. (*Id.* at 289-190). Fitzgerald identified Staley both out of court in a photopack display,[7] and in court. (*Id.* at 285, 295-296).

James Burnett also testified at trial. He had accompanied Staley to the Five Flags apartments where the victims resided. At first, Staley parked the car in the parking lot and told Burnett to stay in the car. Then Staley got out of the car and headed in the same direction Fitzgerald and Staley had gone earlier. (Id. at 196-197). Burnett got out of the car and walked around, staying close to the car. Eventually, Staley returned carrying some clothes. (*Id.* at 198). Staley returned to the apartment a few more times; at one point he was carrying fishing poles when he returned. (*Id.* at 197-200). Burnett followed Staley on his next trip to the apartment. The men entered the apartment through an unlocked door. Burnett went into the kitchen. He and Staley looked around. Burnett saw a cooler by the door and saw Staley place several items in it. He also saw that Staley had a machete in his hand. (*Id.* at 200-201, 207).

_____

[7] Although Kent Leslie immediately identified Staley in the photopack, Fitzgerald told the detective that he thought Staley was the culprit, but could not be 100% sure because Staley was wearing a hat when he committed the crimes. (Exh 24: Vol. 5: T 334).

After a few minutes, Kent Leslie walked out of the bedroom, and started screaming. Staley and Burnett then left, but returned to the apartment a few minutes later. (*Id.* at 203, 204-205, 208). Burnett saw Staley break the apartment door with his machete. Staley reached through the door and pulled out the cooler. (Id. at 209-210). The two men left, got into their car, and drove away. They headed home. At one point they slammed the car into a driveway on a dead end street. They jumped out of the car and ran behind some houses. Burnett said the last time he saw Staley, Staley was still carrying the cooler and getting into some water. (*Id.* at 210-213). Burnett then walked to the apartment of a friend of his and did not return home until the next day. *(Id.* at 215).

Shortly after the crimes occurred, the police discovered the car abandoned by Staley. There were fishing poles and a machete in the car. (Id. at 261-263). The police also went to the home of Robin Burnett at approximately 10:15 a.m. the morning after the home invasion robbery. Ms. Burnett is the mother of James Burnett and Staley's girlfriend. She is also the owner of the automobile which was driven by Staley and James Burnett and abandoned on the dead end street. Ms. Burnett, her son James, and Staley all reside together in Ms. Burnett's house. When the detectives arrived at Ms. Burnett's house, they found Staley at the residence and arrested him. A search of the house revealed the presence of a cooler containing several of both victims' personal items stolen during the robbery, and those items were wet. (Exh 24: Vol. 5: T 339-342, 356). Police also found Staley's wet clothing on the bedroom floor. (Id. at 350-351). Consequently, the admission of Kent Leslie's satellite testimony, even if erroneous, could not have had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*

Ground one does not merit habeas corpus relief.

Ground Two

Staley contends that the postconviction court erred in failing to grant an evidentiary hearing on Staley's claims of ineffective assistance of trial counsel. He asserts the trial court's summary denial of these claims, and the appellate court's affirmance, conflict with United States Supreme Court precedent. Staley contends he alleged specific acts and omissions by counsel that prejudiced him, and the state court records did not conclusively refute his allegations.

Ground Two has no merit because Staley fails to raise a federal constitutional issue. Federal courts have jurisdiction to entertain petitions for habeas relief only from persons who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Claims which are not based upon a violation of the United States Constitution are not cognizable in a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254(a). *Barclay v. Florida*, 463 U.S. 939 (1983). *See also Wainwright v. Goode*, 464 U.S. 78 (1983); *Engle v. Isaac,* 456 U.S. 107, 119 (1982). Errors which do not infringe upon federally protected rights provide no basis for federal habeas corpus relief. "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988). Staley's claim of error in the postconviction proceeding fails to raise a claim of federal constitutional magnitude which is cognizable in

a § 2254 petition. *See Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987)("Neither the state court's failure to hold a hearing on petitioner's 3.850 motion nor its failure to attach the relevant portions of the record in any way undermines the validity of petitioner's conviction"); *see also Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995)("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.")(internal quotes omitted); *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989)(agreeing with the majority view and holding that "a petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings"). The Eleventh Circuit reiterated this principle in *Quince v. Crosby*, 360 F.3d 1259 (11th Cir. 2004), holding that "while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief." *Id.* at 1262.

Moreover, there was no abuse of discretion in the state court's summary denial of Staley's postconviction claims without a hearing. Generally, under Florida law, a defendant is entitled to an evidentiary hearing unless the postconviction motion or any particular claim in the motion is legally insufficient or the allegations in the motion are conclusively refuted by the record. *See Freeman v. State*, 761 So. 2d 1055, 1061 (Fla. 2000). In order to support summary denial, the trial court must either state its rationale in the order denying relief or attach portions of the record that would refute the claims. *See Anderson v. State*, 627 So. 2d 1170, 1171 (Fla. 1993). Additionally, where no evidentiary hearing has been held, an appellate court must accept the defendant's factual allegations as true to the

extent that such allegations are not refuted by the record. *See Peede v. State,* 748 So. 2d

253, 257 (Fla. 1999). The burden is on the defendant to establish a legally sufficient claim.

*See Freeman*, 761 So. 2d at 1061. The state court in this case properly denied the rule

3.850 motion without a hearing, because Staley's claims were conclusively refuted by the

record. In so holding, the state court provided a reasonable rationale and attached relevant

portions of the record, as required by Florida law. The state appellate court's affirmance of

the summary order denying postconviction relief establishes as a matter of state law that

Staley's claims were either insufficient on their face to state a claim for relief or were

conclusively refuted by the record. Thus, Staley has no recourse to challenge the propriety

of the trial court's summary denial of his postconviction claims in this Court.

Ground two does not warrant habeas corpus relief.

Ground Three

Staley contends that the state court erred in failing to vacate one of his convictions

because they are in violation of Staley's Fifth Amendment Double Jeopardy rights. As

factual support, Staley asserts:

> The state courts['] denial and affirmance of the Petitioner's Fifth
> Amendment violation claim was an unreasonable application of law. Home
> Invasion Robbery and Burglary convictions stemming from single criminal
> episode violates double jeopardy. The state court held double jeopardy claim
> should have been raised in post-conviction proceeding although Petitioner
> timely and properly raised claim in state court; fundamental error which could
> have been raised by appellant [sic] counsel.

(Amended § 2254 petition at page 8)

Ground three is procedurally barred. By citing *Coughlin v. State*, 932 So. 2d 1224

(Fla. 2d DCA 2006) and *Lyell v. State*, 872 So. 2d 447 (Fla. 2d DCA 2004), in its per curiam

opinion affirming the denial the motion to correct sentence, the Florida appellate court implicitly determined that under state law, the double jeopardy claim challenging Staley's convictions and sentences was not cognizable in a Rule 3.800(a) motion to correct illegal sentence. In *Coughlin*, the court held:

> Double jeopardy challenges to convictions are not cognizable under rule 3.800(a) for two reasons. First, a traditional double jeopardy challenge attacks both the conviction and, by default, the sentence, while rule 3.800(a) is limited to claims that a sentence itself is illegal, without regard to the underlying conviction. *See, e.g., Plowman*, 586 So. 2d at 455; *Henry*, 920 So. 2d at 1205; *Salazar*, 675 So. 2d at 655; *Spella*, 567 So. 2d at 1051; *Ferenc*, 563 So. 2d at 707. Second, permitting defendants to attack their conviction and sentence under rule 3.800(a) would subsume Florida Rule of Criminal Procedure 3.850 into rule 3.800(a), thereby allowing defendants to circumvent rule 3.850's two-year time bar for attacking their convictions and sentences. *Cf. United States v. Little*, 392 F.3d 671, 678 (4th Cir. 2004) (finding that expanding Federal Rule of Criminal Procedure 35(a), after which rule 3.800(a) is modeled, would impermissibly infringe upon other collateral review rules).

*Coughlin*, 932 So. 2d at 1226. In *Lyell*, the court pointed out that Rule 3.850 is subject to a two-year time limitation.

Claims that are unexhausted and procedurally defaulted in state court are not reviewable by this Court unless the petitioner can demonstrate cause for the default and actual prejudice, *Wainwright v. Sykes*, 433 U.S. 72 (1977), or by establishing the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent" contemplated in *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991); *Marek v. Singletary*, 62 F.3d 1295, 1301-02 (11th Cir. 1995).

Staley does not argue, much less demonstrate, the existence of cause and prejudice or a fundamental miscarriage of justice in his case.[8] Rather, Staley appears to argue that the state appellate court wrongly applied the state's own procedural rules in determining the double jeopardy claim should have been raised in a Rule 3.850 motion rather than a Rule 3.800(a) motion. As such, Staley's argument concerns a matter of state law and is not cognizable in this federal proceeding. Federal habeas relief is available to correct only those injuries resulting from a violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Wainwright v. Goode*, 464 U.S. 78 (1983); *Engle v. Isaac*, 456 U.S. 107, 119 (1982). Errors which do not infringe upon federally protected rights provide no basis for federal habeas corpus relief. It is well-settled in this circuit that federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures. *Branan v. Booth*, 861 F.2d 1507 (11th Cir. 1988); *Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." *Branan*, 861 F.2d at 1508. A state's interpretation of its own rules or statutes does not raise a federal constitutional issue. *Wainwright v. Goode*. The writ of habeas corpus, 28 U.S.C. § 2254, was not enacted to enforce state-created rights. *Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir. 2000).

Further and alternatively, even if not procedurally barred, the double jeopardy claim is without merit. The state trial court, after reviewing the court records and the State's

---

[8] It should be noted that Staley did raise a similar double jeopardy claim under the guise of ineffective assistance of appellate counsel in his petition for writ of habeas corpus filed in the state appellate court. See Respondent's Exhibit 16 at pages 5-11. The State responded that appellate counsel cannot be deemed ineffective for failing to raise a nonmeritorious issue. See Respondent's Exhibit 18 at pages 9-18.

response to the order to show cause, determined there was no violation of Staley's double

jeopardy rights. The order states:

> The Defendant now alleges that his convictions for home invasion robbery and burglary violate Double Jeopardy. Specifically, the Defendant claims that burglary charge is "subsumed," or a lesser included offense of the home invasion robbery. The court finds that the Defendant's claim is without merit. The State provided the following facts about the case:
>
>> This case involved a late-night home invasion robbery and burglary of an apartment with two residents inside. Staley entered the apartment, took some of the residents' clothing, and stowed it in his vehicle in the course of several trips from the apartment to the vehicle. Staley then re-entered the apartment with the machete and loaded several of the residents' possessions into a cooler that was on the floor by the door. One of the residents awoke and chased Staley out of the apartment. After, Staley left the apartment, the resident called 911. While the resident was on the phone with the 911 Operator, Staley broke through the closed apartment door with the machete and retrieved the cooler. *Staley v. State*, 829 So. 2d 400 (Fla. 2d DCA 2002).
>
> In reviewing the facts, the court agrees with the State that Double Jeopardy is no bar to conviction for discreet acts that are separate crimes arising from the same criminal episode. *See Brooks v. State*, 630 So. 2d 527 (Fla. 1993) and *Garrsion [sic] v. State*, 654 So. 2d 1176 (Fla. 1st DCA 1994). *See also Smith v. State*, 632 So. 2d 95 (Fla. 2d DCA 1994). Therein, separate convictions and two separate cases for sequential robberies within different parts of one business of discreet individuals did not invoke Double Jeopardy for the crimes that occurred within each of the two separate criminal episodes.

Exh 29: Order Denying Defendant's Motion to Correct Illegal Sentence at pages 1-2

(footnote omitted).

A review of the record shows Staley committed two distinct separate acts which

formed the bases for the home invasion robbery and burglary counts. Therefore, even

though the offenses were committed during one general criminal episode, Florida law

allows the imposition of convictions and sentences for each of those separate crimes. In

*Deloach v. Wainwright*, 777 F.2d 1524 (11th Cir. 1985), the Eleventh Circuit opined:

> We are, however, bound by the Supreme Court of Florida's interpretation of its legislative enactments. Our review of a state prisoner's claim that a state sentencing procedure violated the double jeopardy clause is limited. "With respect to cumulative sentences imposed in a single trial, the double jeopardy clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S. Ct. 673, 678, 74 L. Ed. 2d 535 (1983). "Where . . . a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct . . ., a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter* at 368-69, 103 S. Ct. at 679.

Deloach, 777 F.2d at 1525-26. In the instant case, the Florida appellate court's affirmance

of the order denying the motion to correct illegal sentence demonstrates that the state

legislature intended that multiple punishments be imposed for the criminal acts committed

by Staley.

Ground three does not warrant habeas corpus relief.

**Accordingly,  the Court orders:**

That Staley's petition is denied.  The Clerk is directed to enter judgment against

Staley and to close this case.

## CERTIFICATE OF APPEALABILITY AND

## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of

appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to

appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court

must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on June 9, 2008.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Negusse Staley, Pro se